## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| HSUAN-YEH CHANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1129 (ABJ) |
| | ) | |
| DAVID J. KAPPOS, | ) | |
| Undersecretary of Commerce | ) | |
| for Intellectual Property and | ) | |
| Director of the U.S. Patent | ) | |
| and Trademark | ) | |
| Office | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Hsuan-Yeh Chang, proceeding *pro se*, brings this action against defendant David J. Kappos in his official capacity as Undersecretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("PTO," "USPTO"). The complaint alleges that the PTO acted arbitrarily and capriciously and in excess of its statutory authority, in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702–706 ("APA"), by denying his application for full registration as a patent agent under 37 C.F.R. § 11.6(b) on the basis of his immigration status. Plaintiff seeks judicial review of the agency decision. The parties have cross-moved for summary judgment. Because the Court finds that the PTO's decision was not an abuse of discretion and was within the bounds of its statutory authority, the Court will deny plaintiff's motion and grant defendant's cross-motion.

## BACKGROUND

The following facts are undisputed, except where noted.  *See* Pl.'s Statement of Uncontested Facts [Dkt. # 13] ¶¶ 1–22; *see also* Def.'s Statement of Uncontested Facts [Dkt. # 10] ¶¶ 1–22.  Plaintiff is a Taiwanese citizen currently residing in Massachusetts.  Administrative Record ("AR") [Dkt. # 5] at 1.  In July 2008, plaintiff worked as a technical specialist at the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner LLP ("Finnegan") in its Taipei, Taiwan office.  *Id.* at 10.  In 2008, Finnegan transferred plaintiff to its Cambridge, Massachusetts office in order to "provide valuable technical expertise and support for [Finnegan's] patent application practice."  *Id.*  Finnegan petitioned the United States Citizen and Immigration Services ("CIS") to grant plaintiff nonimmigrant worker status, *see id.* at 14–16.  On July 22, 2008, CIS approved Finnegan's petition and granted plaintiff class L-1B nonimmigrant worker status, *id.* at 9.  CIS's notice of approval indicated that plaintiff's visa would be valid for two years and that he was authorized to work for Finnegan.  *Id.*

On April 2, 2009, plaintiff applied to take the requisite examination for practicing before the PTO.  *Id.* at 1.  Plaintiff's application was approved on April 20, and the PTO notified him that upon passing the examination he would not be registered as a patent agent or attorney, but would receive limited recognition under 37 C.F.R. § 11.9(b) to prosecute patents on behalf of Finnegan clients.  *Id.* at 97–98.  Plaintiff was further notified that he was not "authorized to be self-employed, even if [plaintiff] t[ook] and pass[ed] the registration examination."  *Id.* at 97.

Plaintiff completed the examination on July 14, 2009.  *Id.* at 99.  Two days later, the PTO's Office of Enrollment and Discipline ("OED") notified him by letter that he had passed the examination.  *Id.*  Plaintiff was again notified that he would not be registered as a patent attorney or patent agent but would receive "limited recognition . . . to practice before [the PTO] in patent

cases." *Id.*  The PTO granted plaintiff limited recognition on September 10, 2009, to extend until the expiration of his visa on August 4, 2010.  *Id.* at 100.  Plaintiff was informed that his registration would automatically expire if his employer or visa status changed, or if he left the United States.  *Id.* at 100–01.  Plaintiff was further informed that he could apply for full registration if he were to become a permanent resident or citizen of the United States.  *Id.* at 101.

By letter dated April 12, 2010, plaintiff informed OED that he was no longer employed by Finnegan but had obtained an Employment Authorization Document ("EAD"), which authorized him to work in the United States.  *Id*. at 103.  Plaintiff claimed that his EAD contained no restrictions on his employment.  *Id.*  On that basis, he argued, he should be able to obtain full registration as a patent agent.  *Id.*  Plaintiff enclosed a new application to practice before the PTO, a copy of his EAD, and a copy of the PTO's letter of September 10, 2009, that notified him that he had been granted limited authorization to practice.  *Id.* at 103–12.  The copy of the EAD showed an expiration date of April 6, 2012.  *Id.* at 108.

OED rejected plaintiff's application for full registration on April 22, 2010.  *Id.* at 114–16. OED informed plaintiff that "[t]wo-year increments of lawful employment are inconsistent with registration by the USPTO to practice before the USPTO in patent cases" because "[n]either USPTO nor clients may rely upon an individual so limited to continue to be available to represent the client beyond the end of each increment[.]"  *Id.* at 115.  OED also informed plaintiff that his prior limited recognition had automatically terminated due to the termination of his employment with Finnegan.  *Id.* at 114.  Plaintiff was, however, eligible to apply again for limited recognition if he were to gain employment with a "registered practitioner."  *Id.*

Plaintiff filed a petition on June 4, 2010 challenging OED's determination under 37 C.F.R. § 11.6(b).  *Id.* at 117.  OED dismissed the petition without prejudice because plaintiff

failed to pay the required filing fee.  *Id.* at 124.  Plaintiff re-filed his petition with the correct fees

on June 17, 2010.  *Id.* at 126.  Plaintiff's petition also informed OED of his pending application

for permanent residence.  *Id.* at 127.  Approximately two months later, he applied for limited

authorization to practice based on new employment that he had obtained.  *Id.* at 134.

OED denied the petition for full registration on the merits on August 31, 2010.  *Id.* at

139–44.  OED's opinion indicated that plaintiff had "failed to demonstrate that his registration

would not be 'inconsistent with the terms upon which [plaintiff] continues to lawfully reside in

the United States' as provided under 37 C.F.R. § 11.6(a)(1)."  *Id.* at 139.  OED did, however,

grant plaintiff's request for limited authorization, *id.* at 139, 145–46, and informed plaintiff that

he could "apply for registration if [his] immigration status changes to United States permanent

residence or citizenship[,]"  *id.* at 146.

Plaintiff filed a petition for review of OED's decision by the Undersecretary of

Commerce for Intellectual Property and Director of the PTO ("the director") on September 29,

2010.  *Id.* at 149.  The director affirmed OED's decision on November 3, 2010.  *Id.* at 174.

Plaintiff moved for reconsideration of the director's decision on December 27, 2010, *id.* at 175,

and the director affirmed his original decision on May 16, 2011,  *id.* at 184.

On June 15, 2011, plaintiff filed his complaint in this Court seeking judicial review of the

PTO's decision to deny him a change in status from limited authorization to full registration.

Compl. [Dkt. # 1] at 1.  Plaintiff has moved for summary judgment.  [Dkt. # 6].  Defendant has

cross-moved for summary judgment.  [Dkt. # 10].

On July 13, 2012, plaintiff submitted a status report indicating that his application for

permanent residence had been denied in December 2011 and that he currently resided in the

United States on a non-immigrant H-1B worker visa.  Pl.'s Status Report [Dkt. # 19] at 1.  His

EAD, which had authorized self-employment, expired on April 6, 2012.  AR at 108; Pl.'s Status Report at 1–2.  The PTO points out that plaintiff's H-1B visa "is restricted in both time and the nature of his work."  Def.'s Status Report [Dkt. # 20] at 1.  Under the H-1B visa, plaintiff is restricted to prosecuting patent applications for his current employer, Nantero, Inc.  *Id.* at 1–2.  The visa expires on September 30, 2013.  *Id.*[1]

---

1       In a July 23, 2012 Minute Order, the Court asked the parties to brief the question whether this case is not moot since plaintiff no longer holds an EAD.  Defendant responded affirmatively, pointing to plaintiff's statement in the complaint that "[t]he *only* issue . . . is whether USPTO can deny [plaintiff's] request for full registration as a Patent Agent . . . merely because there is an expiration date on [his] EAD."  Def.'s Status Report at 2 (emphasis added); Compl. at 4.  A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citation omitted).  "It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011) (internal quotation marks omitted), quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

Plaintiff counters that his claim is "capable of repetition yet evading review."  Pl.'s Status Report at 2.  Under some circumstances, a case may not be rendered moot when the alleged injury has ceased if the injury is "capable of repetition yet evading review."  *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).  This exception applies only in "exceptional situations," *id.*, and only where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."  *U.S. v. Juvenile Male*, 131 S. Ct. 2860, 2865 (2012) (alteration in original) (citations omitted); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011).

Plaintiff meets the first prong of the test since the pendency of application for an EAD or permanent residence may be shorter than the course of litigation.  In this Circuit, a situation lasting less than two years generally qualifies as evading review.  *See Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005).  Plaintiff's situation in this case has indeed evaded review, since his EAD expired and his application for permanent residence was denied during the course of this litigation.  *See* Pl's Status Report at 1 (explaining that plaintiff's EAD had expired, and his green card application had been denied, both since the commencement of this action).  Plaintiff also meets the second prong because there is a reasonable expectation that he may reapply for permanent residency and may be able to obtain a new EAD as an ancillary benefit while his new permanent residency application is pending.  Def.'s Supplemental Pleading [Dkt. # 24] at 2.  Since plaintiff has shown that his injury is capable of repetition yet evading review, the Court proceeds to the merits of his claims.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).  In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

Where a plaintiff proceeds *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal

pleadings drafted by lawyers.'"  *Cheeks v. Fort Myers Constr. Co.*, 722 F. Supp. 2d 93, 107

(D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

**I.      The PTO did not abuse its discretion in denying full registration to plaintiff.**

A person aggrieved by agency action is entitled to judicial review under the APA.  *See* 5

U.S.C. § 702.  A trial court must review the decision of the agency under the standards set forth

in the APA.  *See* 5 U.S.C. § 706(2) ("The reviewing court shall . . . hold unlawful and set aside

agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law[.]"); *see also Dickenson v. Zurko*, 527 U.S. 150, 165

(1999) ("Congress has set forth the appropriate standard [of review] in the APA.").

The PTO "may establish regulations, not inconsistent with the law, which . . . may govern

the recognition and conduct of agents, attorneys, or other persons representing applicants or

other parties before the Office[.]"  35 U.S.C. § 2(b)(2)(D).  The PTO therefore has "broad

authority to govern . . . the recognition and conduct of attorneys" who practice before it.

*Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006).[2]  Congress has "delegated plenary

authority over PTO practice . . . to the Office."  *Stevens v. Tamai*, 366 F.3d 1325, 1333 (Fed. Cir.

2004) (internal quotation marks omitted), quoting *Gerritsen v. Shirai*, 979 F.2d 1524, 1527 n.3

(Fed. Cir. 1992).  "Title 35 vests the [PTO], not the courts, with responsibility to protect PTO

proceedings from unqualified practitioners."  *Premysler v. Lehman*, 71 F.3d 387, 389 (Fed. Cir.

---

2      In reviewing decisions of the PTO, this Court is bound by decisions of the United States
Court of Appeals for the Federal Circuit.  *See Wyden v. Comm'r of Patents and Trademarks*, 807
F.2d 934, 935–37 (Fed. Cir. 1986) (holding that appeals of district court cases arising under
PTO's authority to regulate attorneys and agents are subject to the exclusive jurisdiction of
Federal Circuit because they "arise[] under an Act of Congress relating to patents."); *see also
Jaskiewicz v. Mossinghoff*, 802 F.2d 532, 535–37  (D.C. Cir. 1986) (transferring appeal to the
Federal Circuit because "The Federal Circuit has also held that its appellate jurisdiction . . .
extends to matters that relate to the practice of patent law before the PTO").

1995), citing *Leeds v. Mosbacher*, 732 F. Supp. 198, 200 (D.D.C. 1990).   The Court may "disturb the [PTO's] decisions regarding a potential representative's qualifications only if it finds that the [PTO] abused [its] discretion in denying a petitioner's application." *Maresca v. Comm'r of Patents and Trademarks*, 871 F. Supp. 504, 507 (D.D.C. 1994).

An agency abuses its discretion if its decision is arbitrary and capricious. *Id.*, citing *Gager v. Ladd*, 212 F. Supp. 671, 673 (D.D.C. 1963).   This occurs if a "decision is based on an erroneous interpretation of law, on factual findings that are not supported by substantial evidence, or if [the decision] represents and unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005), citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).   "This standard of review is highly deferential: 'If [the agency] has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" *Maresca*, 871 F. Supp. at 507, quoting *Hines ex rel. Sevier v. Sec'y of the Dep't of Health and Human Serv.s*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).   A court must uphold an agency's interpretation of its own regulations "unless it is plainly erroneous or inconsistent with the regulation." *Lacavera*, 441 F.3d at 1383, citing *Star Fruits*, 393 F.3d at 1282.

The PTO has statutory authority to promulgate regulations respecting the recognition of attorneys and agents practicing before it. *See* 35 U.S.C. §2(b)(2)(D).   The PTO's regulatory authority under this statute is "broad." *Lacavera*, 441 F.3d at 1383.   Under the PTO's regulations, aliens may practice before the PTO subject to certain conditions:

> When appropriate, any alien who is not an attorney, who lawfully resides in the United States, and who fulfills the requirements of this part may be registered as a patent agent to practice before the [PTO], provided that such registration is not inconsistent with the terms upon which the alien was admitted to, and resides in, the United States[.]

37 C.F.R. § 11.6(b). For those aliens who do not qualify for full recognition, the PTO regulations provide:

> A *nonimmigrant* alien residing in the United States and fulfilling [the qualifications for practice before the PTO pursuant to 37 C.F.R. § 11.7(a), (b)] may be granted limited recognition if the nonimmigrant alien is authorized by [CIS] to be employed . . . in the United States in the capacity of representing a patent applicant by presenting or prosecuting a patent application. Limited recognition shall be granted for a period consistent with the terms of authorized employment or training.

37 C.F.R. § 11.9(b) (emphasis added).

Plaintiff argues that the PTO misconstrued 37 C.F.R. § 11.6(b) by denying him recognition because, unlike section 11.9(b), the regulation "does not differentiate among *immigrant* and *non-immigrant* aliens[.]" Compl. at 6 (emphasis in original). According to plaintiff, section 11.6(b) sets forth the only requirements governing the full registration of aliens wishing to practice before the PTO, and he meets all of these requirements: he lawfully resides in the United States; he has the qualifications set out in 37 C.F.R. § 11.7 to practice before the PTO; and his registration would not be inconsistent with the terms upon which he was admitted to, and resides in, the United States. Compl. at 6. He asserts that the "USPTO cannot deny full registration merely because an expiration date is set on the alien practitioner's employment authorization." Compl. at 11.

The PTO rests its decision on its interpretation of the third requirement – whether the registration would be consistent with the terms of plaintiff's admission to the United States. It concludes that the two-year temporal limitation on plaintiff's EAD, and the uncertainty surrounding whether he would be authorized to continue to reside and work in the United States

after that timeframe expired, was inconsistent with full PTO registration.[3]   AR at 115.   "Two-year increments of authorized employment are inconsistent with registration by the USPTO to practice before the USPTO in patent cases" because "[n]either USPTO nor clients may rely upon an individual so limited to continue to be available to represent the client beyond the end of each increment[.]" AR at 115.   But, consistent with sections 11.6(b) and 11.9(b), the PTO gave plaintiff limited recognition during the time that his EAD was valid because plaintiff demonstrated that he was employed by a registered practitioner in the capacity of preparing and prosecuting patent applications for others before the PTO.   *Id.* at 143.

The PTO also relies on language from its *General Requirements Bulletin for Admission to the Examination for Registration to Practice in Patent Cases before the United States Patent and Trademark Office*, (Mar. 2012) *available at* www.uspto.gov/ip/boards/oed/grb.pdf ("GRB"), as the agency's longstanding interpretation of section 11.6(b).   *See* AR at 140.   The relevant provision of the GRB states:   "A qualifying non-immigrant alien within the scope of 8 CFR 274a.12(b) or (c) is not registered upon passing the examination.   Such an applicant will be given

---

3       In addition, defendant contends that plaintiff's continued residence in the United States was dependent upon the approval of his application for adjustment of status. AR 141–42. The EAD is an ancillary benefit that plaintiff received while his application for permanent residency was pending.  Def.'s Supplemental Pleading [Dkt. # 24] at 2.

limited recognition under 37 CFR § 11.9(b) if recognition is consistent with the capacity of employment or training authorized by the USCIS."  GRB at 8–9.[4]

In response to plaintiff's petition challenging the PTO's determination, OED further found:

> Granting a nonimmigrant alien full registration would give the nonimmigrant alien USPTO approval to be employed and practicing before the USPTO beyond the lawful employment authorized by the USCIS.  For example, the nonimmigrant alien is not authorized to continue employment beyond the expiration date or upon departing from the United States.

---

[4]    Plaintiff takes issue with the PTO's reliance on the GRB.  However, the Court defers to agency interpretation of its own rules.  *Hines ex rel. Sevier*, 940 F.2d at 1528.  The PTO relies on the GRB to interpret the ambiguous phrase in section 11.6(b):  "registration would not be inconsistent with the terms upon which the alien was admitted to, and resides in, the United States[.]"  The Court concludes that this is a rational interpretation of that phrase.  *See Lacavera*, 441 F.3d at 1383 (finding that the GRB "reasonably interprets" the previous version of section 11.9); *Premysler v. Lehman*, 71 F.3d 387, 389–90 (Fed. Cir. 1995) (finding that the PTO could rely on the GRB as guidance for what kinds of credentials typically demonstrate "technical competence" under an agency regulation prohibiting the PTO from registering an individual to practice before it unless he is "possessed of the legal, scientific, and technical qualifications necessary to enable him or her to render applicants for patents valuable service").

Plaintiff finds significance in a PTO response to a comment made during the notice and comment rulemaking for 37 C.F.R. § 11, in which the PTO declined to adopt a definition for when "registration would not be inconsistent with the terms upon which the alien was admitted to, and resides in, the United States."  *See* Compl. at 12–13; Pl.'s Reply [Dkt. # 13] at 13–14.  It described that the admission of aliens to the United States and their ability to be employed changes based on regulations promulgated by the Immigration and Naturalization Service.  69 Fed. Reg. 35428-01 at 35446.  Plaintiff then points to the fact that section 101 of the Immigration and Nationality Act, 8 U.S.C. § 1101 ("INA"), has always distinguished between immigrant and non-immigrant aliens.  Compl. at 12–13; Pl.'s Reply at 13–14.  He concludes that by declining to adopt the definition set forth in the INA, the PTO demonstrated its intent that full registration under section 11.6 not be limited to immigrant aliens only.  *Id.*

This is a circuitous argument and the Court is unpersuaded.  The PTO was clear that its decision was based on the temporal limit on plaintiff's authorization to work in the United States under his EAD, so the INA distinction between immigrant and nonimmigrant aliens is irrelevant.  Moreover, the interpretation in the GRB is consistent with section 11.9, which sets out a separate type of recognition available to nonimmigrant aliens, suggesting that section 11.6 was not intended to cover nonimmigrant aliens.

AR at 142.  Furthermore, "neither the USPTO nor clients may rely upon an individual so limited to continue to be available to represent the client beyond the end of each increment for which employment has been authorized."  *Id.* at 115.

Finally, on appeal of OED's determination, the director affirmed.  *Id.* at 174.  He found that as of September 2010, the average pendency of a patent application was measured to be 35.3 months, or just under three years.  *Id.* at 168.  Like the OED, the director concluded that since plaintiff's EAD was valid for just two years and renewal was uncertain, neither plaintiff's clients nor the PTO would be able to rely on him to see patent matters through.  *Id.*  The director also emphasized that the PTO has no mechanism for revoking registration based on the loss of lawful residency in the United States.  *Id.* at 169–70.  Therefore, if the PTO were to grant plaintiff full registration, it would be authorizing him to work as a patent agent past the time when his authority to work in the United States expired.  *Id.*  This would be inconsistent with the terms of plaintiff's residency in the United States.  *Id.*  These findings were affirmed in the director's order denying plaintiff's motion for reconsideration.  *Id.* at 196.

The PTO's interpretation of its own regulations is entitled to substantial deference, as long as the PTO has conducted an appropriate review of the record and "articulated a rational basis for the decision."  *Hines ex rel. Sevier*, 940 F.2d at 1528.  Here the agency's decision was premised upon the legitimate concern that the prosecution of a patent application could extend longer than the limited term of plaintiff's admission to the country.  So it was reasonable for the PTO to find that permitting plaintiff to represent clients for matters that typically take longer than his work authorization permitted him to perform would be inconsistent with the terms upon which he resides in the United States, and is thus contrary to the requirement of section 11.6(b).

This decision is consistent with precedent from the Federal Circuit.  In *Lacavera*, the plaintiff worked in the United States under a one-year TN visa, which permitted her to work solely at the New York office of the White & Case law firm.  441 F.3d at 1382.  As here, the plaintiff applied for full registration, but was denied because of the legal restrictions imposed by her visa.  *Id.*  She challenged the PTO's decision as an abuse of discretion and as a violation of its statutory authority.[5]  *Id.*  The court rejected both arguments, stating:

> Because granting Lacavera full registration would have given her PTO approval to do work in which she could not lawfully engage, we find no abuse of discretion in the PTO's determination that granting her full registration was inconsistent with the terms of her visa.  Moreover, the decision to grant limited recognition with restrictions consistent with those in her visa correctly applied sections [11.6(a) and 11.9(b)] and the GRB, and was, therefore, not an abuse of discretion or arbitrary and capricious.

*Id.* at 1383.

The same reasoning applies, despite the fact that plaintiff in this case was authorized to work for any client, whereas the plaintiff in *Lacavera* was authorized to work only for the clients of one particular firm.  Furthermore, full registration has no set ending date and the PTO has no mechanism for revoking the registration of patent agents if they stop lawfully residing in the United States.[6]  Mem. in Support of Def.'s Cross-Mot. for Summ. J. ("Def.'s Mem.") [Dkt. # 10] at 9; AR 169–70.  So, if the PTO had granted plaintiff full registration, that registration would have authorized him to continue to prosecute patents even if his authorization to work in the United States were to expire.  In other words, the PTO would run the risk of authorizing plaintiff to engage in work that he could not lawfully perform.  *See* AR 169–70.  This is the exact

---

5       The plaintiff also challenged the decision as a violation of equal protection, an argument that the court similarly rejected.  441 F.3d at 1383–84.

6       The bases on which the PTO can revoke registration are codified in Title 37 of the Code of Federal Regulations, Sections 10 and 11.  Failure to lawfully reside in the United States, however, is not one of those bases.  *See* 37 CFR §§ 10–11.  Plaintiff does not contend otherwise.

rationale by which the *Lacavera* court decided to deny the plaintiff's application for full registration.[7]   In accordance with that decision, the Court finds that the PTO's denial of plaintiff's full registration in this case was not an abuse of discretion.

**II.     The PTO's decision did not exceed its statutory authority and should be afforded deference under *Chevron*.**

Plaintiff next argues that the PTO exceeded its statutory authority in promulgating regulations that distinguish between immigrant and nonimmigrant aliens. *See* Compl. at 16.  The Court rejects this argument as well.

Under 35 U.S.C. § 2(b)(2), the PTO has broad authority to govern the recognition and conduct of attorneys that practice before it.   *Lacavera*, 441 F.3d at 1383.   Since plaintiff challenges the PTO's authority under this statute, the Court applies the framework set out in *Chevron, USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984).  *See also Lacavera*, 441 F.3d at 1383 (applying *Chevron*).   Under *Chevron*, the Court must first inquire "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.   If that is the case, the Court must "give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43.  If, on the other hand, the statute is silent or ambiguous on the precise question at issue, "the court does not simply impose its own construction on the statute . . . .

---

7       Plaintiff argues that his status is distinguishable from the status of the plaintiff in *Lacavera* because his EAD had no terms and conditions.  Pl.'s Reply at 7–8, 13–14.  Since his EAD was condition-free, he argues, the limitation that the PTO placed on his full registration – no full registration without immigrant resident status – cannot reasonably be construed as an interpretation of section 11.6.  *Id.*  But as the Court described above, the EAD has one important condition that plaintiff ignores:  a temporal limit.  Because the PTO's decision was based on this term, the Court finds that the PTO's determination can reasonably be construed as an interpretation of what is "inconsistent with the terms upon which [plaintiff] was admitted to, and resides in, the United States" under section 11.6.  *See supra* note 4; *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 301–302 (1979) (explaining that the promulgation of substantive rules requires notice and comment rulemaking).

Rather, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

In *Lacavera*, the Federal Circuit directly confronted this issue and found that the PTO has the authority under 35 U.S.C. § 2(b)(2)(D) to consider visa restrictions in determining whether to grant or deny registration.   441 F.3d at 1383.   Section 2(b)(2)(D) allows the PTO to "require [applicants for full recognition] . . . to show that they are . . . possessed of the *necessary qualifications* to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office[.]"   35 U.S.C. § 2(b)(2)(D) (emphasis added).   The court found the term "necessary qualification" to be ambiguous.   *Lacavera*, 441 F.3d at 1383.   In the next step of the *Chevron* analysis, it found that "[i]t was reasonable for the PTO to interpret legal authority to render service as being a necessary qualification [under 35 U.S.C. § 2(b)(2)(D)]."   *Id.*

In accordance with the Federal Circuit's decision in *Lacavera*, this Court finds that the PTO did not exceed its authority by considering the temporary nature of plaintiff's EAD in its registration determination.

**CONCLUSION**

For the foregoing reasons, the Court concludes that the PTO has not abused its discretion or exceeded its authority by denying plaintiff full registration as a patent agent. Accordingly, the Court will deny plaintiff's motion for summary judgment [Dkt. # 6] and grant defendant's cross-motion [Dkt. # 10]. A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  September 13, 2012